and may it please the court, Paul Cassell for 15 families who lost loved ones in the crashes of two Boeing 737 MAX aircraft. Many of those families are here in the courtroom this morning. Many others literally around the globe are listening on this court's audio feed. And the reason they're here is because Congress promised them enforceable rights in the Crime Victims' Rights Act. As relevant here this morning, they were promised the right to reasonably confer with prosecutors, to timely notice of any deferred prosecution agreement, and to be treated fairly through the process. The district court in this case found, as a matter of fact, that all of those rights had been denied to the victims' families. And yet when it came time to enforce those rights, the district court said Congress had not given it the authority to, quote, ensure that justice was done, close quote. The slight clarity of the case is there's no dispute about the CDRA violations. Correct. At least A-5 and A-9. Correct. And there's no dispute, at least with the cross-appeal, that your clients are victims. Correct. So is it fair to say the issue, most of it, reduces to a remedy issue? Precisely. I mean, it is true that Boeing has tried to insert into this case the issue of whether the victims' families here represented crime victims. But this Court, as you know from our brief, in our view, lacks jurisdiction to consider the matter. In any event, that's a factual issue that would be entitled to review only for clearly erroneous mistakes below. So the case boils down, I think as you suggest, to whether there was a remedy or not. And here again, we submit that that question is fairly straightforward as well. Congress in the CDRA put in a provision which we call the Judicial Enforcement Provision, and — Alan, sure. But even — I mean, this isn't critical of you, because I think it's a difficult — there isn't that much law, and I don't see that much under 3771. Let's say I'm not persuaded, or maybe you're not even asking for us to reverse the tolling decision. And then, maybe more controversially, you push back, I'm not — I don't really see that we have authority to piecemeal parse through a DPA. But — but I guess I'm thinking, ultimately, a DPA is something a court will revisit at the dismissal stage. So — so am I wrong to think that we — we either redo the whole thing, but that would mean unwinding something like the $500 million fund, or not? In other words, isn't it all or nothing? No, Your Honor. I think there are multiple ways that you can grant the petition. The simplest way is that the district court never considered our argument that the shall and sure clause applies. So one simple way to resolve this issue — by the way, Boeing and the government didn't address it in their filings below, either. So one simple way to handle this petition would be to send it back to Judge O'Connor to rule in the first instance. But we believe that the better course would be for this court to put an end to what's already been 14 months of litigation by granting the petition. And as you mentioned, the simplest way to grant the petition is to simply follow the text of the CVRA. But then if you want to look for other sources of authority, you've already mentioned the Speedy Trial Act, which requires the consent of the district court to expending it. By the way, the district — But you aren't opposing the total, right? You wouldn't want the time to have elapsed. Well, we're opposing the approval by the district court of the DPA. And Judge O'Connor said he had approved the DPA by operation of his granting the motion. I don't want to be cute at all, but I think it's relevant. There was a district judge in Utah in 2006 in a case called Heaton. An excellent decision, as I recall. Do you remember the relief that you granted there? My recollection is that in that particular case, there was a dismissal that required ensuring that the victims had been conferred with. And so the district court judge in that case, as I recall, enforced the CVRA by directing prosecutors to confer with the family in that case. Why isn't that the exact relief that Dean is telling us to apply? In other words, I'll read from your order. The court can discharge its obligations under Rule 48, and the government is directed to provide the basics for its motion to dismiss. This pleading will also recount the victim's views on the dismissal. So why aren't we almost exactly in the Dean posture? It's not a guilty plea we can undo. Thankfully, we don't even need to undo that, because the dismissal is still a year away. So it's not in the same posture in the Dean case. So as you recall from reading the Dean decision, this court remanded to the district court, directing the district court to take heed of the fact that the victims had not been conferred with. Or she decided whether to accept or reject the plea. Correct. And here, Judge O'Connor hasn't yet been presented with the government's effort to seek dismissal of the single felony count. So it would be possible for that to be handled at the dismissal stage, but at that point, it's much more difficult to enforce the victim's right to confer. They're entitled to a right to confer. I'm just interrupting because of your time, but why? Why wouldn't it just be almost the identical predicament, which is the court denies the dismissal? You've got a pending felony charge. Go to trial, stipulated, maybe even a stipulated trial based on the factual basis. Well, we certainly wouldn't be opposed to that kind of relief, obviously, but we believe that the release should come earlier, because, I mean, for the families who are here this morning, there is continuing anxiety about what's going to happen to this case. When you say relief earlier, am I right? You want certain provisions carved out, like immunity, no future prosecution, restructuring the FBA, maybe refer government officers because they didn't do the right stuff, but you want to keep things like the $500 million fund. I would phrase it differently, Your Honor, with all respect. We would believe that the way to resolve this case is the way that the judicial enforcement provision indicates the case should be resolved. The district court shall ensure that the victims are afforded their rights, such as the right to confer. How should the district, how can the district court discharge that obligation? By directing that there be meaningful conferral with prosecutors, and there cannot be meaningful conferral right now, because there is an immunity clause that's in place. In fact, if you look at the record ... I'm pausing several. I think the district court would say, you know, you got the public arraignment, I made a causality determination, the government sat down with you three times, including Attorney General Garland, so you got meaningful conference sadly late. But when you look at the DPA, it allows a lot of criminal prosecution, all individuals, even Boeing, just not by the fraud section, as I read it. So with all respect, a couple of factual corrections there. Those three meetings with the Justice Department, we asked to confer, and they refused. They said, we will not confer with you, we will listen to you. That is not what the CVRA promises. The second point is, it does bind the fraud section, and we want prosecution by the fraud section or by other prosecutors, but we are entitled to confer with the fraud section about whether they should move forward and criminally prosecute Boeing. You are prosecuting. Right now there is a pending criminal prosecution. Right, but there is a ... the way the DPA is set up, as I know Your Honor is familiar, this is essentially immunized, and I think that's the word actually that Judge O'Connor used. I mean, if we look at the real world situation right now, the company is sitting pretty. Nothing is going to happen to it for committing the deadliest corporate crime in U.S. history. It's going to file some reports with the Justice Department, and at the end of the day, unless this court intervenes, it's going to lead to a dismissal of all these charges. And that's why we're here this morning. That's just ... But any CVRA case, which shall ensure language, has led a court to actually appoint independent prosecutors. No, we're not asking for that. What we're asking for is what the CVRA promised, which was a right to confer with these prosecutors about how they're going to discharge the case. Now, we're not blind to the fact that it may be that ultimately our efforts to persuade them are unsuccessful, but no one knows until that happens. And I've had a chance to talk to my clients. They can be very persuasive when they explain the facts of this case and how it led to the deaths of 346 people around the world, led to those deaths after Boeing knew exactly what the problem was with its aircraft and continued to allow it to go uncorrected until on March 10, 2019, 156 people died in Ethiopia. So that's the argument that they want to present. There's new factual information that they've collected in the last couple of years. In fact, the DPA is inaccurate. The DPA falsely states that Boeing's corporate leadership had nothing to do with this. But the Securities and Exchange Commission, as we point out in our brief or our appendix at page 480 to 500, specifically found that Boeing's corporate leadership knew that they had a problem with MCAS, and it did nothing about it. So we want to confer with the prosecutors about that and explain that they have an inaccurate statement in their DPA. What did you mean in your brief that the victims were... Well what Boeing tried to do is they seem to have unlimited funds to devote to the defense of this case. So by throwing 500 million into the pot, I think they assumed that at that point they would buy off the victims and make it impossible for them to challenge the DPA. In fact, you see hints of that in their brief. They never specifically ask you to throw out the entire DPA, but they sort of hint that it would be complicated if the rights were to be enforced. But let's be clear. I don't want to overstep what we can prove in the record. But we asked for an evidentiary hearing in front of Judge O'Connor. We asked to develop the facts about how this sweetheart deal was negotiated. And we were denied an evidentiary hearing. And when we conferred with the prosecutors, we asked, what did Boeing know and when did they know it? And they stonewalled us. If you look at page 612 of our appendix, the government refused to give us any information about how what I think is fairly described as the most heavily criticized DPA in American history was reached. Let's not mince words here. 346 people died because of Boeing's crime. That is the finding of fact that the district court had here. Now, we think the DPA was unduly lenient, but that is not the claim that we're pressing to this court this morning. The crime as charged is only 371 defrauding the FAS. Right. Defrauding. That is something additionally you would like to be able to think, correct? Well, we would. Who gets prosecuted? It's what's the prosecution? And maybe restitution, amount more or less, or 5%? Our focus is not restitution in this case. Our focus is on justice, holding those criminally accountable for the deaths of 346 people. Now, it is true there might be some restitution obligations at some point, but the focus here is getting the prosecution done, not what might follow from that prosecution. And so what the families... What is the relevant statement that Judge O'Connor said, no bad faith, made a factual finding of no bad faith? Two points on that. First is that's an unsupported factual finding. We asked for an evidentiary hearing. We proffered that we had sent emails to the Justice Department trying to confer with prosecutors, and we were told falsely that no criminal prosecution was ongoing. We even contacted the FBI victim witness court here. Same thing. That information not only was false, but must have been at least in reckless disregard of the truth. Because it... I'm sorry? It seems highly unlikely, yes, and that's why we keep asking the government, just tell us what happened, and the government refuses to tell us what happened. But I thought they did say, I thought reading the record, Gallagher, is Gallagher a man or a woman? Gallagher is a man, I believe. Gallagher was the one who then conferred with the FBI, and they thought by virtue of the fact that FAA was the victim, they thought legally that others weren't victims. I thought that's, you know, whether you accept it or not, I thought that was the not bad faith approach, no? No, I don't think so. Mr. Gallagher, 11 months before the DPA was concluded, sent an email to the victim rights ombudsman, ironically, saying, we just read in Boeing's 10K filing with the Securities and Exchange Commission that there's a criminal investigation into these crashes. We want to talk to the prosecutors who are conducting that investigation. And a few hours later, the victim rights ombudsman said, I've been told by the FBI there's no such investigation. So then they contacted the FBI as a belt and suspenders approach. No criminal investigation at all. Correct. And in fact, that's the finding of fact, that's the finding of fact that underlies the third violation of rights here, that the victims were treated unfairly. I mean, if we're talking about what's unfair. Before your time runs out, just switch to law for a minute. How do you reconcile, or are these two cases inapposite, Wild, 11th Circuit, and Falker, DC Circuit, as distinct from our Dean decision? Yes. Wild, of course, is completely distinguishable. In fact, there's a footnote in the En Blanc decision from the 11th Circuit distinguishing that situation, no federal charges filed, from this situation, federal charges filed. So Wild is distinguishable. Your other case, Falker, and the follow-on case from the Second Circuit, HSBC, let's be clear, both of those cases hold that district court judges do have authority over the DPA, but it's limited. Limited to what circumstances? One of the circumstances is to protect a violation of, quote, recognized rights. That's language from the U.S. Supreme Court in Hastings. This is a quintessential example of the limited circumstances in which a district court was obligated to intervene. We have findings of fact that three CVRA rights were violated for 346 families in a homicide case. If that doesn't constitute a situation where a district court is obligated to step in and protect recognized rights, it would be hard for a law professor to dream up one, because this is perhaps the most serious corporate crime in American history, perhaps the most heavily criticized DPA in American history, and violation of the rights of hundreds of families proven in the district court, and yet the district court said he could not ensure that justice was done. So we come to this court to ask you to simply remand to the district court and tell Judge O'Connor that he does have authority to ensure that justice is done. He does have authority to make sure that the victim's families have the right to confer with prosecutors and to convince them to do the right thing. And this is not a case where you have to figure out what charges should be filed. Charges have already been filed. May it please the Court, Jeff Hilberg here on behalf of Lott Polish Air. We're here today because the district court below improperly denied crime victim status to Lott and did so based upon latches, and we believe that that's an incorrect determination. First, as stated by this court in Allen, the CVRA does not contain any time limitation. Therefore, latches could not apply in this situation, especially when we have open DPA. Judge Hickinson, one of the things you mentioned earlier in the argument was a hearing on the dismissal. However, the district court below made a determination that there wasn't going to be anything further going on, but I'll get to that point later in the argument. Well, maybe a little pushback on your first point. When I look at 3771, it does have timeliness requirements, right? You've got a timely request to undo the guilty plea or to redo the Rule 32 sentencing, right? Yes. But there are built-in suggestions that you just can't wait forever to assert victim status. Correct, and that's why I limit it to the situation we're in sitting here today. Obviously, if we're 20 years down the road, that's a different animal. What's your rule of law? When is it too much? Could you assert you're a victim even after the district court had, say, granted the motion to dismiss? If the DPA provided for closure of – So the DPA runs out this coming January, and then about six months later – And then six months later – They're going to move to dismiss. Could you come in even – when's – what's your rule of law in terms of when latches would or wouldn't kick in, or are you saying latches can never apply to a CVRA case? Well, CVRA doesn't have a limitation, but logically, there could be a limitation as you describe. However, we have something in addition in this case where if the court looks at the DPA itself on page 17 at Lot Mandamus Record 84 – I know we've got multiple Mandamus records – and I think it's an important point out to the court, which is it says, the company agrees that the statute of limitations as to any violation of U.S. federal law that The CVRA is a U.S. federal law that we contend was violated here, and therefore, the tolling provisions here – it goes to the latches argument, but I think it's important to point out here it says, any violation of U.S. law, and it talks about when the fraud department first gets notice or the end of the DPA plus five years. In this instance, they certainly had notice when the families filed their motion. That was in December of 21. So the DPA was entered in January of 21, December of 21. Certainly everyone had notice at that point. And our point is, with respect to the latches argument, the district court below said, well, you waited two years. Really, we didn't, because when you look at the timeline, there's a tolling to December. Then in addition to that, the record shows that we reached out to the Department of Justice in December – it was December 30th, just a few weeks after the families filed their motion. So we reach out and we try to have a discussion with them for approximately eight months until we ultimately filed our own motion in October 21. Just to remind me, are you in the same situation with the other airline in terms of – did the government urge the district court to apply latches, or was that a sua sponte determination? The government urged – OK. That's – Boeing – it was Boeing and or the government. It was urged. It wasn't a sua sponte determination. But the – Now, if you were recognized as the victim, it seems to me what you want is an accounting of the disbursement of the $1.7 billion. But that doesn't really, to me, go to your conferral rights. That's more enforcement of the DPA, which courts don't do, right? Well, I think the court is conflating what we're requesting versus SmartWings. OK. SmartWings is the party that's seeking the accounting. And we are seeking the right to confer. OK. In order to get where? In order to participate and be heard so that we can provide our industry expertise in, among other things, determining the $1.2 billion that was determined and how it should be applied – not necessarily an accounting of how it was applied, but how it should be applied because we can provide that industry perspective that was not provided for. And if I could make – Yes. If you could take 30 seconds to say what you want to, and if you need more time, I'm sure you'll let me know. Well, thank you, Your Honor. I want to point out in the opinion, and specifically on page 28, it's mandamus record 568, and what the judge says is he determined that latches applied because – and what he says is, thus, the period in which 2022 movements statually conferred rights, e.g., the right to notice and conferral prior to entry of the DPA, would have been recognized as long since expired. My paraphrase of that is, because the DPA was already entered, I'm going to determine that latches applies, and the problem here is the precedent that that sets, which is regardless of whether or not it was deliberate or just a mistake with respect to what we would characterize as the secret agreement, this sets the precedent of you could have a secret agreement, whether it's deliberate or unintentional, and latches would apply in every case post-DPA if the logic undertaken by the district court is allowed to stand. And I know I'm out of time. I'm going to rely on the briefs. Unless the panel has any further questions, I will take my seat. Thank you, counsel. Thank you. Thank you, Your Honors. May it please the Court, Callie Castillo for SmartWings Airlines. Mr. Halberg did address the issues of latches, and those same arguments apply to SmartWings here. SmartWings is unique in the situation in that the district court did sua sponte, rule latches against it, and SmartWings had no opportunity in the briefing below to the district court in its petition to address those arguments. I'm going to focus my argument today on the issue of the remedy that SmartWings is seeking with respect to the accounting. And the accounting is consistent with both the plain terms of the CVRA as well as the deferred prosecution agreement that Boeing and the government entered into. The CVRA plainly provides, as this Court has already discussed, that the Court shall ensure that the rights of crime victims are received as set forth in the CVRA. Those rights include both prospective release. Okay. Yes, shall ensure that the CVRA rights are guaranteed, but you say as set forth by the DPA. I apologize. I misspoke. As set forth by the CVRA. 33771. Yes. A5, A9, and unfair. Yes. And those rights are both prospective in terms of the notice and opportunity to confer before an agreement is reached as well as the retroactive in terms of the restitution. And here, that is exactly where the deferred prosecution agreement comes into play here because both the government and Boeing recognized that airlines had a right to compensation because of the direct harm that they incurred from Boeing's fraud. Okay. I guess we'll ask Boeing that. I'm not sure Boeing's being careful. They negotiated a plea, or not a plea, a DPA to a 371 conspiracy to fraud the government. I'm not, they're clearly contesting whether the individual families are direct or proximate victims as we understand legally, criminally. I'm not sure they would concede even that your client is a criminal victim for purposes of restitution. Your Honor, I'd like to refer this court to Appendix 14, specifically Paragraph 12, which is the provision of the payment of airline compensation amount in which Boeing directly agreed to pay $1.77 billion to its airline customers for the direct pecuniary harm that As a result of the grounding, I'm going to guess they're going to get up and say that doesn't mean legally you are entitled to criminal restitution. But if you did not have the fraud that Boeing incurred on the government, you would not have had that grounding. And the direct... That's a finding. I guess the district court didn't reach causality as to your client, did it? Actually, Your Honor, I would also refer this court to Appendix 93 and 95 in which the district court did find that as a result, Boeing's airline customers and every pilot operator received both inadequate training and inaccurate material operation manuals based on the guidance from the FSD port. That is a direct causation between Boeing's fraud... What you want is get this trial done, get a criminal conviction, and get a criminal restitution order. Is that... Am I right? Your Honor, what we're trying to assert is the rights the deferred prosecution agreement gave to airlines and that this... The district court recognized that airlines were victims of Boeing's fraud. And so what we're asking... What we were asking the district court to do is one, recognize SmartWings as a crime victim and two, order an accounting to ensure that Boeing complies with this provision. Legally, wouldn't... If we were to give you that relief, we would be in friction at least with the DC Circuit's Falker case, right, because the court there said courts are not in the business of enforcing compliance with the DPA. Fair to say? Fair to say that that's what they said, that they also... That their courts have also recognized that there's a presumption of regularity. And this court, this case, excuse me, is every evidence that there is irregularity from the fact that the victims did not receive notice and did not receive their rights ahead of the Boeing and government's agreement to the fact that this... That the administration of this fund specific to airlines is not being administered. To this date, SmartWings does not and has not received any funds toward this. And it has evidence that Boeing and has either had already paid out those funds prior to even reaching this agreement, such that this agreement means nothing, or two, is selectively administering it to its favored airline customers. But that is not the case here. And for all of these reasons, SmartWings respectfully asks this court reverse the district court finding, order it to assign SmartWings as a crime victim, and to order the accounting to ensure that it receives its rights. Thank you, counsel. Thank you. Good morning, your honors, and may it please the court. Conor Wynn for the United States. Before the district court, the federal government repeatedly acknowledged that it should have conferred with the crash victim's families and beneficiaries before entering the DPA with Boeing in this case. To address that lack of conferral, however, petitioners sought judicial remedies that are unavailable under the law, or as the district court found, unwarranted on the particular facts of this case. The district court, therefore, denied their motions for relief under the CVRA, and this court should similarly deny their petitions for mandamus. You would agree, having acknowledged severe CVRA violations, that the government should think as creatively as possible how to remedy those, instead of, in other words, not just an apology. I assume here you're going to tell us what the full orbit of ways to get them back to where one would be, if you accept, as we must, that Dean controls and you have this obligation. Yes, your honor. The government has endeavored in multiple ways to rectify the CVRA concerns in this case. It has done so, to begin with, by supporting the arraignment of Boeing and allowing the victims to speak at that arraignment and express their concerns and feelings, both about the prosecution and the DPA. It has gone through... Let me mention the one thing that seems to me essential to this, though, the difference between what the effect of a pre-DPA conferral would be and just meetings to hear the concerns of the victims. It seems to me, to unravel that, to actually give meaning to the conferral obligation, the DPA needs to be on the table. And I think your argument all along has been that it can't be, that this thing's in motion. I mean, is that the impenetrable barrier to giving any recognition to the right to confer? So, Judge Stolfwick, I think you're touching on one of the fundamental tensions in this case. And that is that the government can never go back and put the individual petitioners in the position of, if we had conferred with them, before entering into the DPA. And that sort of relief isn't on the table here because it is neither authorized by the DPA when those statutes are read through the constitutional avoidance canon and separation of powers concerns. And it's also not available under the district court's inherent authority. So what both of your questions are getting at is how can the government make this the most right that is consonant with both the statutory regimes and the constitution here. That's what we've been endeavoring to do. We've attempted to meet with them, admittedly post hoc. It's not as good as if we had done it before. I guess I'm just not really understanding that because you have charged Boeing with a felony. That felony is still pending. That's correct, Judge Higginson. So the criminal prosecution goes forward. Subject to the deferral under the DPA and pending a final evaluation of whether to dismiss the charges at the conclusion of that agreement. When the government makes its bed, either with an NFA or a DPA, the courts aren't going to touch that contract. But the courts with the DPA, unlike Mr. Epstein's arrangement in Wilde, you still have to come and you're only bound to seek a dismissal and the district court can deny the dismissal and the government then would have to go to trial. No? Your Honor, that touches on a couple of things. And before I get to the exact legal mechanics of how Rule 48 dismissal works in this case, I do want to point out that the government has committed to consulting with the individual petitioners before that Rule 48 hearing. We made that representation below in the district court and intend to honor it. As to the specific mechanics, Rule 48 involves a number of the same separation of powers concerns that are underlying sort of the entire DPA status of this case. In fact, in the Fokker Services case with the D.C. Circuit, I'm going to ask you to confine yourself to our published controlling law, Dean, not Fokker and not Wilde and not HBSC. Certainly. I don't think there's anything in this court's case law that's ever spoken to that exact situation. Having said we're going to remand district judge in the Rule 11 context, you can decide to reject the guilty plea. There's no infringement of Article 2 authority. The district court's being asked to impose its imprimatur and it says no. That's to me identical to Rule 48. You're going to ask the court to dismiss, but you know our law on Rule 48, correct? So you're not saying this DPA binds the court to grant your motion to dismiss, are you? No, Your Honor. I don't think the court is obligated to grant the motion to dismiss. I think it would, I don't think it would. What is the very clear en banc settled Fifth Circuit law as to the two reasons the district court will reject the government motion to dismiss? What are the two separate reasons? Your Honor, I believe that the district court will reject a motion to dismiss if there's some suggestion of government irregularity. Okay. And they clearly think there's an immense amount of secrecy and irregularity. So they may get an evidentiary on that. And what's the separate reason the district court can reject? I believe it relates to potentially the interests of the public and justice. And I'm just pressing you to see your answer, but how could it not relate to the public interest if the government's acknowledged minimum to maybe three violations of the CBRA? So it seemed to me there's going to be a really difficult question as to whether this prosecution ends or whether the government goes forward against Boeing. That may well be so, Your Honor. And I'm sure as things develop and that hearing comes to fruition, those concerns will be present for the district court to think about and to evaluate whether. Except that that is the legal regime. Therefore the government in the conferring with that you insist you're doing with the victims over the next year, it may be you accompany your motion to dismiss with a description of why there was bad faith and why there is a massive violation of public interest. You would fully disclose all that. Your Honor, I think we would continue to discuss these matters in the way that we have so far. I think to the extent we're going to fully disclose some of the government's internal deliberations, I can't make any guarantees or representations as to exactly how we would go about doing that. Or if we would, you know, we have attorney client and deliberative process privileges to think about. At the same time as the victims were being told there's no criminal investigation, was Boeing conferring with your fraud section in relation to resolving a criminal investigation? Yes or no? So at that point, the investigation had been opened. I don't believe there were resolution discussions on the table at that point, but the government was investigating. Clearly there were resolution discussions before you filed the DPA and the information. That's correct, Your Honor. There's no doubt that the victims were never included. Certainly. I agree with that. I just need to point out that the, as far as I'm aware, the resolution discussions came later in time than when the victims reached out to the ombudsman. At that point, the government was investigating Boeing and considering what charges if any to bring. Your Honor, the Justice Department had, well, to be clear, we were considering these particular individuals throughout the investigation and negotiation of the DPA. As you can see, as Your Honor is aware, there's a $500 million fund that we specifically negotiated with Boeing and included in the DPA to ensure some sort of compensation for those individuals. The government, however, read the CVRA, its definition of crime victim, to not include these individuals at the time that it was entering this negotiation. Therefore, it didn't believe that it had an obligation under the CVRA to, in fact, confer with them. And that's why there was no conferral. It wasn't the government attempting to disregard its obligations under that statute. Your Honor, we advanced that argument and continue to advance it throughout the district court proceedings in this case. Judge O'Connor ruled against the government's position on that point. And after that, we have no longer been pressing that argument. I will note that in Judge O'Connor's final remedial opinion, he described that as a good-faith legal error by the government. And that is exactly what it was. You're not suggesting that a district court's denying a Rule 48 dismissal motion in any way has constitutional separation of powers. That's just a court doing its job. Your Honor, I think that it could, depending on the exact reasons that the district court denied the motion. If the United States is positioned that we're a district court to order the government to continue prosecuting, that does start to infringe upon Article II consent. Go with me on the hypothetical. Let's say we enter an order that's equivalent to the district judge's order in Heaton. Motion dismissed, denied. What happens? Your Honor, if the motion to dismiss were denied, and if the government, in review of that, didn't seek further review, we would obviously comply with the motion. And that would lead to? Well, in that case, the prosecution would be live. Justice, when under 11c1, a district court rejects a guilty plea? I do want to tease out a bit of a distinction here between the plea agreement and deferred prosecution agreement context. I recognize that Dean involved plea agreements, but that's a little bit different. The judiciary has traditionally had significant authority over whether or not to accept a plea agreement. And in fact, it's codified in the Federal Rules of Criminal Procedure. Deferred prosecution agreements are something different. They're creatures of the executive branch, and as a historical matter, the federal courts have had very little, if any, oversight authority. But Falker and HSBC, that was when district court said, I don't like this term or this term. Here we've got a violation that the government's admitting to of a statute, Congress saying victims have to be heard. The government's saying, oops, we didn't. So it seems to me very different, and it seems to be especially different than an NFA. You're still, you've indicted. You've come into court, and you have to seek, pursuant to the BPA, a court to add its imprimatur to dismiss. A couple of points, Your Honor. First, I agree that it is a slightly different flavor than HSBC Bank and Falker Services in the sense that the court's there reviewing the substantive terms of the agreements. But a rejection of a government motion to dismiss pursuant to Rule 48 after the completion of a deferred prosecution agreement is a different sort of intrusion upon the executive authority. Instead of telling the executive under what conditions to prosecute, it's telling the executive to prosecute at all. Right? I mean, traditionally, the government can bring a charge and dismiss at any time. It's already prosecuted. Correct, Your Honor. It's a pending case. It is a pending case, but it is also within the executive's purview to decide when to dismiss cases. Are you familiar with the Heaton case that I quoted or not? Not off the top of my head, Your Honor. I'm happy to... No, no, no, no. You agree that they've done everything right in terms of there is a criminal case and they've sought mandamus timely. And you're not disputing their victims, right? All of the above is true? I agree with all that. Yes, Your Honor. I think the fundamental problem is we think that the chief remedy that they seek isn't available under the statutory regimes. The statutes do not clearly authorize a judicial intervention with DPAs. And the inherent authority argument that they've advanced... But 373071 does now specifically refer to DPAs. And I think it's notable that it refers to the fact that they have a right to timely notice of a deferred prosecution agreement. Which they didn't get. Which they did not get. Absolutely correct, Your Honor. And the government does regret that. But I think it's notable that in A9, I believe it is, Congress specifically acknowledged the existence of such agreements, but they're nowhere else in the statute said that courts have judicial authority to tinker with those sort of agreements. But you heard my line of questioning. I'm not contemplating a district judge would tinker. I'm seeing pure symmetry to Rule 11. You can't pick and choose and parse it out. But you still have to accept it or reject it. And Your Honor, I think the government would resist the analogy to Rule 11 because of the fundamental and traditional differences between plea agreements and deferred prosecution. That I completely don't understand, right? In a guilty plea, the defendant is still a charged, convicted defendant. And therefore, they will have to pay restitution. If anything, this logic makes less sense in the DPA context because according to the agreement you've cut with them, they will never be convicted of anything. There will be no restitution. Indeed, Boeing is here arguing they aren't even criminal victims. So a couple of points, Your Honor. First, I would refer the court to Chief Judge Srinivasan's discussion of the differences between plea agreements and deferred prosecution. That's Falker again. But Falker's been critical of Dean. We're bound by Dean. But Your Honor, Dean doesn't address deferred prosecution agreements. I think that is important. It is only about plea agreements. This is a different case. And that distinction is important because it implicates different constitutional... I don't agree with that. I mean, Falker, Srinivasan's saying you can't step in and carve out portions you don't like. That's that law. That's exactly what the law is in the Rule 11 context. I understand that, Your Honor. And respectfully, the government would urge that that difference matters. Would you be standing there urging the same position if you and Boeing had negotiated a DPA that didn't include any money to the victims? Yes, Your Honor, because fundamentally the government believes that DPAs and NPAs are a form of executive prerogative and implicate... This is a direction I just don't accept. I mean, once I see the two as a world apart from each other, one, you're indicting. You're coming in. You had an arraignment. Another... And that same one, you've got to get a district court to disagree. I don't see any equivalence. Wild, Epstein, that's an NFA, NPA world. Here you've engaged the judiciary. You're still saying there's... I guess I'd like to understand what is the Article 2 infringement of a district court doing what Rule 48 says, pursuant to very subtle law, it has to choose to do yes or no. Because for a district court to deny a government's motion to dismiss at the conclusion of a DPA is nothing short of an order to continue prosecuting, and it is the executive branch's determination under the Constitution as to when to do that. I'm saying there's evidence that Boeing had bribed the fraud section. You're still saying Rule 48 wouldn't allow the district court to say, I'm not going to let them go free. You've got a charge pending in my court. Go forward. Your Honor, I think that is the rare situation where Rule 48 can be used. Bad faith can be used to force a trial. Right. I'm not saying that the government has a carte blanche and can never be checked in any fashion, but at a Rule 48 dismissal hearing, there needs to be something along those lines where there's a genuine question as to whether the government is at that moment in its prosecutorial decisions considering an option that reeks of bad faith or that is just so blatantly incompatible with the public interest. Those two adjectives, patently incompatible, don't exist in our case law. It's just against the public interest. Against the public interest. And I think in making that determination, a district court does have to be deferential to the executive's view of what the public interest is under our constitutional system. Your Honors, I recognize that my time has expired. I'm happy to talk about the latches issue relating to law and smart wings, but if this Court doesn't have questions, I don't feel the pressing need to. I defer to the panel. No further argument needed.  Thank you, Your Honors. Good morning, Your Honors, and may it please the Court. Paul Clement for Boeing. You've already heard from a number of lawyers this morning, but on behalf of Boeing, first and foremost, I want to make clear that Boeing deeply regrets the two plane crashes that Boeing has taken extraordinary steps to improve its internal processes and has paid substantial compensations to the families of the crash victims and to its airline customers. The DPA, entered over two years ago, was a critical component of that process, and Boeing has complied with its obligations under that agreement for over two years of the agreement's three years term. We're not concerned with compliance. That's just not our business, right? The only thing in front of Article III is a pending felony charge against your client. That's the way I look at it. Am I wrong? We can't get involved in whether you comply or not. That's the fraud sections world. I agree with that. I think compliance is relevant in the following sense. If we hadn't complied, then presumably DOJ would be going forward with that information, telling the district court that we're out of compliance and we're going forward with the case, in which case we'd be in a completely different posture, and the victims, if they are statutory victims, we can talk about that if you want, but they would be there and have all of their rights. I do think it's a relevant fact, and I think it sets the stage for what would come later and the rest. Again, happy to talk. Well, you can see that it may be simplistic, which is why oral argument is going to be very helpful. I may be just very wrong in the way I look at this, but it seems to me Dean not only stands for the proposition there was a violation, but Dean tells us what the remedy is. I completely disagree with Your Honor, and I do think, but I'm not sure I'm going to be able to persuade you, because I think I start where the government does, which is there's just a fundamental difference between the plea context and the DPA context. And I think that certainly there is a role for conferral with the victims, and the government has said in its briefs it will confer with the victims before the Rule 48a hearing, if there is a hearing, or the motions practice. Usually it's just a motion and it gets granted. But in all events, they will confer. But if you assume that the result of that conferral is that the government wants to move forward and ask for the dismissal because there has been full compliance with the terms of the DPA, and they have discharged their sort of obligations to confer with the victims, I think at that point the judge should grant it. And I think if the judge didn't grant it because it had a completely different view of the propriety of granting the motion or all of the things, I mean, you know, just to forecast, if you think, Judge Higginson, that, you know, that part of the reason that you can deny this petition, which I do think would be the resolution, you would deny this petition, you don't have to remand after a petition for mandamus, you just deny this petition, but if in the process you said, well, there's going to be a role for the victims at the Rule 48, and maybe some of this can be addressed there, I will forecast, you know, I haven't had a chance to consult with my strong guess is we'll be making some separation of powers arguments at that point, and we might be back up here, maybe it'll be on the government's mandamus petition next time around. But that's all, I mean, the law on the Rule 48 is pretty darn settled, en banc Fifth Circuit law, as I described earlier, you can tell me I'm wrong, either bad faith, which would then have to be looked into, because their entire mandamus suggests there was bad faith six months of that, I don't see any inquiry into it, and then or a violation of the public interest, and it's hard for me to see that the conceded three violations of the 771 isn't violent of the public interest, I don't know, I don't, there would still be your honor, a complete mismatch between those procedural violations, and the substantive remedy of kind of forcing the government to go forward with the prosecution. And I don't think your en banc case law deals with the situation where there is a Rule 48 motion at the end of full compliance with the DPA, and it's You should be constantly resisting that. Courts might as well think the DPA is invisible. It's a contract you two negotiated, wisely or ill-wisely, all the courts are focused on, to my eye, is that pending felony charge, and whether to dismiss it if the government moves for dismissal. All I can tell you, your honor, is I think that would be, I don't think your, you do not have a controlling case. I do think the fact that the 48A motion would be after full compliance with the DPA. Yeah, but I'm not worried about compliance. It's not our business. But don't, no, full compliance in the government's view. Forget your view. I agree. You really have almost no role in monitoring a DPA, and you certainly can't excise it, which is why denying this petition is actually quite straightforward. We are now really debating a case that is going to be before the district court in a year and a half, and I will passionately tell you that, you know, I don't, you know, if I'm the one that's tapped to do it in the district court, I will be there saying, no, this would be a complete Article II violation, and if I could just bring it home to 3771, because my friend on the other side likes to describe 3771B as the and with respect, that just ignores the structure of the statute. If you look at the structure of the statute, and we can have a debate about how much you want to take into account titles and statutes and all that, but I think for a structural analysis, they're helpful. B is entitled rights afforded, and the reason I don't think it's right to think about that principally as an enforcement provision is there is a subsection of the statute, which is D, and D is entitled enforcement and limitations. So there is an enforcement subsection of 3771, and it's not B. I mean, B is kind of the judicial equivalent of the best efforts injunction to the department. Yes, judges, Article III should ensure that the rights are afforded, but it's not. I read 3771, the enforcement recommends undo things that they didn't get to talk about. It's a redo. No, that's explicit in there. It's a Rule 32 redo. That's explicit. Congress mentions now, thank goodness, DPA has got to be considered because the government's coming up with these things, and at the end of the DPA, there is no criminal anywhere. There is no restitution anywhere, and as I read it, you're now arguing they're not even victims. We are arguing that they are not victims of the crime charge, and I'm happy to talk about that. We're not arguing that they are not crash victims. Of course they are. The only reason I wouldn't talk about it is the government hasn't crossed an appeal, so I don't really see it's before us. We're a party, and we don't have to cross appeal. You don't have to cross? We do not have to cross appeal. We can't cross appeal. It's a petition for mandamus, and we can't. There was a causality determination of them as victims. Right, but this is an alternative ground to deny the release they've sought, and the en banc court in Wilde, in note 10, when my friend on the other side made this exact you have to file a cross appeal argument, they specifically rejected it in note 10 of the Wilde en banc decision, and I think they're absolutely correct. We can't. This is critical of our dean decision. They don't accept that there is even a pre-charged crime victim. I don't think that's fair reading of the en banc Wilde decision. The panel Wilde decision said that, but the whole reason the Wilde en banc opinion moved to no cause of action instead of no pre-charge rights is to avoid the conflict with the dean decision, so I think the en banc Wilde decision is entirely compatible with the dean decision, and it's certainly the only authority out there on this proposition that we had to file a cross appeal, and again, we can't, first of all, we can't file a cross petition for mandamus. Forget proceeds, really. Okay. Your position is they're not victims because the crime charge says the victim is the government. Is that an acceptable description of what you're saying? That is a shorthand of one of the essentially two arguments that we would make. The second is, okay, if you don't accept that this is an easy case because 371 tells you who the direct and proximate victim is, i.e. the FAA, then you still have to run it through the statute, which is direct and proximate victim or direct and proximate cause. Mr. Gore did have hearings and concluded there was causality, and as I read your contract, and you can expand criminal restitution by contract, the FAA, the factual basis, does describe that's the premise of the whole individual fund, right? But with respect, I mean, you know, what happens in a DPA, as you said, A, you know, it's between us and the government, but you're not confined in a DPA to promise to do things that are limited to the victims of the crime charged. I mean, if Boeing wanted to, and I think they have in other contexts, but if they put in the DPA that Boeing is going to apologize to every, it's in an apology letter to every passenger who flew on a MAX 737 before the grounding, that would be an appropriate term to put in the DPA, but it wouldn't make every person who flew on a Boeing flight, essentially without a crash, without incident, a victim of the charged offense. So you have to, you know, with all due respect to Senator Cruz, you can't just say, well, it's mentioned in the DPA, so of course they are victims of the charged crime. And again, I do think in the— If the felony account goes to trial and you're convicted, your client's convicted, there will be mandatory restitution. This will be resolved, this issue. This issue will be resolved. I mean, I agree, but again, and this gets to, like, the remedy you're envisioning, and if I could just finish my point about D, D is the enforcement provision, don't forget about D6 of the Crime Victims' Rights Amendment, which basically says nothing in this amendment shall be construed to impair prosecutorial discretion. And I think when you think that, and, you know, when Congress did this and got the Justice Department to agree to the CDRA in the first instance, it was provisions like that and the idea that it wouldn't interfere with prosecutorial discretion that got the Justice Department to ultimately support the CDRA. And if you start saying that now— No, you're not saying the CDRA is unconstitutional. Congress decided it's not an infringement to make them confer with victims before they make charging decisions. So that's got no Article 2 problem. I don't have an Article 2 problem with that. But if the remedy—and, look, you know, it's—Congress knew that prosecution's hard. It's particularly hard in a case like this where, you know, the universe of victims may not be self-evident. And so in cases like that, essentially Congress understood that DOJ would make some mistakes and that this was hard. That's why they put a best efforts provision in there, which is unusual. Usually you say just obey the law. But here it's a best efforts obligation. And Congress provided a safety valve in subsection F, the envisioned situations where there would be a CDRA violation and it was too late for an appropriate judicial remedy. And what they said is there's the possibility for the Justice Department to have internal discipline of the DOJ officials who messed up and violated the CDRA. And then just to underscore how relatively limited the judicial role is in all of this, they made explicit that the results of that internal DOJ discipline is not subject to judicial review. So with all due respect, I mean, again, I don't want to project what's going to happen in 18 months from now. I think there is lots of conspiratorial rights, lots of procedural rights. But what's wrong with this petition for review and what would be wrong with the relief you're envisioning is it's a degree of substantive interference with prosecutorial discretion that is not contemplated. And at least as to the petition that's right before you. Your best case for that is Falker, right? And HSBC. But neither of those had to do with the CDRA. Oh, absolutely. But here's why. Neither of them had to do with a statutory procedural right that was violated. Right? Am I right? Both times district courts said, you know, I don't like this portion of the DPA. That's just a way to Okay. But can I disconnect those two for a second? Get back to the fact that there has a CDRA violation. Let's talk, though, about the statutes at issue. Yes, those statutes didn't involve the CDRA. But they did talk a lot about the Speedy Trial Act. And think about what's different between the Speedy Trial Act and the CDRA. First of all, the Speedy Trial Act gives an express role for the judge in approving the staying of the Speedy Trial Clock vis-a-vis the DPA. So it's expressed that there's a judicial role. Second, it doesn't say anything about don't read this provision to impair prosecutorial discretion. Now, you go over to the CDRA, it's different in both respects, and in both respects suggests that this ought to be an a fortiori case. When it talks about, when the CDRA talks about the DPA, I think it's very interesting that it says the specific right there is is to be informed of the DPA. I view that as something that is essentially projected exclusively to the Justice Department. It's not directed to the courts at all. It's not a judicial role at all. Because the DPA typically — It ought to be treated fairly. And here, you and the Justice Department are communicating for months, and they read in the news that your client's not even going to end up a convicted felon. No one is, it appears. So they read in the news that there's a DPA. The action isn't — And they read, oh, they've been charged. Well — Wait a minute. Fine print. The government's going to move to dismiss the charge. Obviously, they — I'm sure they read the whole DPA. They presumably read the provision that also said that it's for the fraud division, not for the whole world. They read the whole thing. Eleven months later, they went to court. At that point, it is too late to provide — just as a matter of chronology, it's too late to provide pre-DPA notice. But then the question is, how do you remedy that? And you — Just because your time's running out. Obviously, you agree, I think. You agree we're bound by Dean. It's a published offense. Absolutely, Your Honor. I think — I hear you vastly over-reading Dean from the way I read it. Well — But you are bound by Dean. With permission from the presiding judge, I'm not vastly over-reading. When I read aloud, we are confident that the conscientious district court will fully consider the plea agreement should be accepted. They repeat that. Those are the penultimate paragraphs. In other words, to me, they're remanding to say, luckily, there isn't yet an accepted guilty plea. And my view of it is, luckily, we don't yet have a decision on a motion to dismiss that looks highly dubious to me, given our 48A case law. So I understand that what I'm about to say is not going to persuade you. Yes, well — I think there is a huge difference between plea agreements and Rule 48A dismissals, particularly in the context we're talking about here. Now, I gather from a number of questions you've asked, you don't accept that. But the best case on that is probably Fokker. And I know that you're not persuaded by that, but I think it is — I mean, you know, part of Fokker's — Well, finish your argument. Well, I mean, part of the reason that Fokker is so helpful is the — is the — Judge Srinivasan essentially got to the conclusion that there's no meaningful role for the courts under the Speedy Trial Act or the inherent authority in the context of the DPA because there is very little judicial role under 48A. And what they specifically said — and with all due respect, I mean, you know, I think it's getting lost in the shuffle — the principal purpose of Rule 48A is to ensure that the defendant's rights are protected so the government is not engaged in a practice where they're going to dismiss and then recharge the defendant. So it's just — and if I could just finish with this one point, if you think — I think the mismatch with the remedy here, if you think about what would happen if there was timely information provided to the — to the crash victims, I mean, they would have conferred with the government if the government said that it wanted to go forward with the DPA and all of the rest of this. If all of that happened, then — and they still thought it was too lenient, there would be no remedy. And it just — and that just shows that there just aren't a lot of room for large, substantive remedies that interfere with prosecutorial discretion under the CVRA. It was meant to be a much more modest statute. And to say that the remedy for blowing the conferral obligation is something you could never get if conferral took place, I think is, with all due respect, overreading it, especially when there's that last provision that says if the courts can't provide an adequate remedy, like DOJ can discipline the CVRA — the people who have violated the CVRA. Sorry. We have one more question. I have one question. You claim that you have raised the latches defense with respect to smart wings. Where in the record did you raise that defense? I don't know that — I mean, do you have a place where we claim that? I mean, I'm not sure that we raised the defenses to smart wings. What I would say is, I think in the context of this, the way that it came forward, you had Lott making their argument. You had, I think, principally the — if I'm remembering it right, but I could be wrong about that — but principally, the Justice Department raising that as to Lott, and then the judge resolves that. There's no — there's no argument, I think, by smart wings that there's any difference between smart wings and Lott with respect to the latches. And so I don't — so, you know, in a perfect world, maybe it gets raised in the right sort of docket number, but I think that's a little too pedantic in the context of this because there's no material difference between Lott and smart wings as to Lott. But it was raised vis-a-vis Lott, and I think — I guess the way I'd put it is that puts smart wings on notice because they don't have an argument that they're in a distinct position from Lott. I mean, another way of putting it is, if chronologically Judge O'Connor had made the latches ruling first as to Lott, were the issue squarely raised, and then smart wings showed up the next day with its petition, I think Judge O'Connor would be perfectly within his discretion to just deny it on the pleadings without doing anything more because he's essentially already decided that issue. So I think — this is a long way of saying — I think the fact that it was raised as to Lott is essentially good enough, especially because I don't see why it couldn't be raised sua sponte. I mean, it's — you know, if you're a judge and you're being asked to do something equitable and you think it's latches applies, I don't think you have to wait for the defendant to raise a latches defense. Thank you, Your Honors. So we're told by Boeing that Fokker is their best case. What does Fokker say? It says there is enhanced judicial power over DPAs containing, quote, illegal or unethical provisions, close quote. This DPA reeks of illegality. Three CVRA violations committed against 346 families. This DPA reeks of unethical provisions. You mentioned reading the newspaper. What happened in this day and age was 346 families around the world suddenly got a Twitter feed or a Facebook post telling them that not only had charges been filed, but they had immediately essentially been dismissed or at least immunized, I suppose, is the accurate way of putting it. And the people responsible for killing their loved ones were never going to go to trial. That's what happened. And you can imagine the shock and dismay around the world when that happened. And ultimately, they were able to find pro bono legal counsel to raise these objections. Now, Judge Higginson, you've mentioned the possibility of moving forward at the dismissal stage of this case. You wanted a lot more intrusive, that's not a negative word, relief, including piecemeal going through the DPA. That, to me, does get us into the world of Fokker and Article II prerogatives. So I maybe hijacked all of your conversations. You probably want to push back and say, we don't even want what you're saying, the Dean equivalent, that may come later. We want a lot more now. So you've sort of got two points that would help me. One is, am I wrong? Is that unsatisfying and insufficient? But if I'm not wrong, what about the fact that Boeing and the government are both getting up and saying, that'll violate Article II, that'll be a constitutional violation if a district judge dismisses on these cases? Well, I want the record to be clear. We certainly are not opposed to the type of relief you're to wait for justice. It doesn't essentially do what I don't think you could do in the plea context. The court can't step in and say, there's still the fund, but there's not the immunity, and we're going to rewrite the factual basis. That's, right? Where's the authority? Is there any people authority for that? Yes, we think there is. You used the phrase, redo. When I teach my crime victims rights class, I say, that's what victims want. They want a redo, to use a technical term. What's the authority for a redo? Dean is a redo. Essentially, the case was re-evaluated by the district court judge, and also another case would be Heaton, I'm sorry, Kenna, out of the Ninth Circuit, where the court ordered that the sentencing hearing be redone because victims were kicked out of the... The statute in Congress contemplated redos for sentencing and guilty pleas. It placed limitations on sentencing and guilty pleas. Limitations on relief for these two... Well, you take the provision, the district court should have taken the provision, B1, the judicial enforcement provision, and said, look, I am obligated to afford the families their right to confer. Judge Southwick, I think, put it very nicely, to confer about what? The DPA. They want that, as you said very nicely, on the table, and the only way to put the immunity provisions of the DPA on the table are to excise those. Let's be clear about what happened. We went to the Justice Department and said, we want to talk to you about prosecuting the company that killed 346 people, and we were told specifically, can't do that. We've signed an agreement. Our hands are tied. We want you to untie the hands of those prosecutors so that they can consider holding Boeing accountable, and the judicial enforcement provision is all you need to look at. It says the courts shall ensure that victims have their rights, and that simply didn't happen here. Another point, you mentioned the rule 48A, public interest standard, and so forth. One of the things that would be critical if that's the path that this court goes down is instructing the district court to be more inquisitive about exactly what happened here. There were two sentences in the government's brief. We acted in good faith. What you ordered was that the government had to include in its motion to dismiss the victim's views on dismissal. I'm sorry, in the Heaton case, for example. You ordered that in the motion to dismiss, the government had to include all the arguments the victims had as to why the motion should be dismissed. Do not. Right, so that would be, but in that case, there wasn't the kind of secrecy and evidence of deception that we're seeing in this is that there be an evidentiary hearing where we can understand. Remember, we've asked the government, what did Boeing know and when did it know it? And we were told, sorry, can't give you any. Page 611 and 612 of our appendix, that describes what happened when the victim's families in this case tried to confer, specifically page 612 of our victim's appendix, and I think that those facts are undisputed at this point. Unless there are further questions, we would ask you to grant the petition. All right, counsel, I imagine every counsel here has more they would like to say, but that's all the time this morning for this argument. We will take the case under advisement. To all those in the audience who were connected with this case, thank you for coming. I'll call the next case.